**Betty Lou MAYES, Appellant,**

v.

**Louella STEWART, Appellee.**

No. 14–98–00579–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 27, 2000.

Rehearing Overruled Feb. 24, 2000.

Jimmy Phillips, Jr., Angleton, for appellants.

Danny M. Sheen, Houston, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN and WITTIG.

## O P I N I O N

DON WITTIG, Justice.

This is a three-cornered claim over the proceeds of a winning Texas lottery ticket. The dispute over the $3.5 million dollar winnings was resolved by a Harris County jury. The jury found against appellant, Betty Lou Mayes, and in favor of appellee, Louella Stewart, on claims for fraud and conspiracy. Mrs. Stewart was awarded $1,785,714 and change. Ms. Mayes raises fifteen issues on appeal, and Mrs. Stewart brings one issue in a contingent cross-appeal. We affirm the jury verdict and the judgment of the trial court.

## Background

On May 1, 1993, Mrs. Stewart's then husband, Bill Stewart, purchased a lottery ticket, and won $3.5 million. At that time, Mrs. Stewart, who was living in New York, and Mr. Stewart were separated. Realizing that he would have to share the lottery proceeds with Mrs. Stewart, Mr. Stewart entered into an agreement with Ms. Mayes, in which Ms. Mayes would claim the ticket as hers and recover the twenty years of installments. Although the winnings would be in Ms. Mayes's name, Mr. Stewart would be able to spend the proceeds as he pleased. At the Stewarts' divorce hearing in November 1993, both Ms. Mayes and Mr. Stewart testified on their oath that Ms. Mayes had purchased the lottery ticket and Mr. Stewart had no claim to it. Accordingly, the trial court determined the lottery proceeds were not an issue in the divorce. A final decree of divorce between Mr. Stewart and Mrs. Stewart was entered on November 9, 1993.

Ms. Mayes received an installment of $125,000 in 1993, and another installment of $125,000 in 1994. In February 1994, Ms. Mayes sold the next three years' installments for $280,000. In January 1995, she sold another five years' installments for $450,000. In 1996, Ms. Mayes attempted to sell the last ten years' installments. Mr. Stewart intervened, however, by admitting the fraud to the buyer.

In December 1996, Mr. Stewart told Mrs. Stewart the truth about the lottery winnings. Mr. Stewart then filed for divorce against Ms. Mayes, claiming a common-law marriage. Mrs. Stewart filed a petition in intervention for claims of fraud, conspiracy, and breach of fiduciary duty which she dismissed when she filed this lawsuit. Thereafter Mr. Stewart's divorce action against Ms. Mayes was also dropped.

In our case, Mrs. Stewart asserted claims for fraud and conspiracy against

Mr. Stewart and Ms. Mayes. She also claimed breach of fiduciary duty against Mr. Stewart. She similarly sought a partition of the lottery proceeds as undivided community property pursuant to TEX. PROP. CODE ANN. § 23.001 (Vernon 1984).

Mr. Stewart filed cross-claims against Ms. Mayes and Ms. Mayes asserted cross-claims against Mr. Stewart seeking a partition of real and personal property. Ms. Mayes also alleged Mr. Stewart and Mrs. Stewart had entered into a conspiracy to acquire her lottery winnings.[1]

Throughout the trial, Ms. Mayes maintained that she had purchased the winning lottery ticket. The jury, however, found Mr. Stewart had purchased the lottery ticket. It also found in favor of Mrs. Stewart on her claims against Mr. Stewart and Ms. Mayes for fraud and conspiracy and on her claim against Mr. Stewart for breach of fiduciary duty. Based on these findings, the jury awarded Mrs. Stewart $1,785,714 for the value of her community interest in the lottery winnings. The jury assessed punitive damages against Ms. Mayes in the amount of $20 and Mr. Stewart in the amount of $50,000. With respect to Ms. Mayes and Mr. Stewart's cross-claims against each other, the jury found: (1) Ms. Mayes did not commit fraud against Mr. Stewart; and (2) Mr. Stewart and Mrs. Stewart were not part of a conspiracy. The trial court entered judgment based on the jury's findings. Although Ms. Mayes appeals the judgment of the trial court, Mr. Stewart does not appeal the judgment entered against him.

### Fraud on the Community

In her first issue, Ms. Mayes contends Mrs. Stewart failed to state a cause of action against her for fraud and conspiracy because there is not an independent cause of action for fraud on the community estate. Ms. Mayes argues that Mrs. Stewart's claims against her must flow from her causes of action against Mr. Stewart,

which constitute an action for fraud on the community.

Fraud on the community in the wrongful disposition of community assets is "the breach of a legal or equitable duty which violates the fiduciary relationship existing between spouses." *In re Marriage of Moore*, 890 S.W.2d 821, 827 (Tex. App.-Amarillo 1994, no writ). Texas law does not recognize a separate and independent cause of action for fraud on the community against a spouse in a divorce action. *See Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex.1998); *In re Marriage of Moore*, 890 S.W.2d at 828. Such fraud, however, can be considered by the trial court in the division of community property. *See Schlueter*, 975 S.W.2d at 589–90.

Texas courts long ago found that an aggrieved spouse may maintain causes of action against third parties for the fraudulent conveyance of community property. *See Gray v. Thomas*, 83 Tex. 246, 18 S.W. 721, 723 (1892) (finding that wife, who had no knowledge of her former husband's ownership in certain property at the time of their divorce and which he had secretly conveyed in trust, would be allowed to establish her ownership in the property as against her former husband's second wife); *Connell v. Connell*, 889 S.W.2d 534, 541 (Tex.App.-San Antonio 1994, writ denied) (stating a third party who knowingly participates in the breach of a fiduciary duty may also be liable for the unfair disposal of community property); *Dearman v. Dutschmann*, 739 S.W.2d 454, 456 (Tex. App.-Corpus Christi 1987, writ denied) (finding fact issue as to whether wife had been fraudulently deprived of her rights in proceeds of insurance policy purchased by husband with community funds in suit for fraud against former mother-in-law for recovery of one-half of proceeds). Mrs. Stewart's claims for fraud and conspiracy against Ms. Mayes stand independent of

---

**1.** In another court, in December 1997, Mr. Stewart pled guilty to aggravated perjury for lying under oath at his divorce hearing about the ownership of the lottery ticket.

any tort claims against Mr. Stewart. Therefore, Mrs. Stewart has stated a cause of action against Ms. Mayes. Ms. Mayes's first issue is overruled.

## Subject Matter Jurisdiction

In her second issue, Ms. Mayes contends the trial court did not have subject matter jurisdiction to hear Mrs. Stewart's claims. Mrs. Stewart filed the current lawsuit in the 11th District Court,[2] while the Stewarts' divorce action was tried in the 245th District Court. Ms. Mayes asserts that Mrs. Stewart's action is in the nature of a bill of review seeking to relitigate the property division entered in the Stewarts' divorce and, therefore, should have been filed in the same court as the divorce action. *See Pursley v. Ussery,* 937 S.W.2d 566, 568 (Tex.App.-San Antonio 1996, no writ) (finding, in an action to reopen the property division on a divorce decree, " '[t]he requirement that a bill of review be filed in the same court that rendered the judgment under attack is a matter of jurisdiction, not merely a matter of venue' ") (quoting *Solomon, Lambert, Roth & Assoc., Inc. v. Kidd,* 904 S.W.2d 896, 900 (Tex.App.-Houston [1st Dist.] 1995, no writ)).

■ We note Mrs. Stewart is not attempting to reopen her divorce case. The long-standing law in Texas is community property not divided upon divorce is held by the former spouses as tenants in common. *See Harrell v. Harrell,* 692 S.W.2d 876 (Tex.1985) (per curiam); *Busby v. Busby,* 457 S.W.2d 551, 554–55 (Tex.1970). Partition is an appropriate remedy to effectuate post-divorce division. *See Harrell,* 692 S.W.2d at 876. Division of undivided community property may be sought pursuant to Tex. Prop.Code Ann. § 23.001. *See Phillips v. Phillips,* 951 S.W.2d 955, 957 (Tex.App.-Waco 1997, no pet.); *Burgess v. Easley,* 893 S.W.2d 87, 90 (Tex. App.-Dallas 1994, no writ). Nothing in

§ 23.001 requires that the suit to partition be filed in the same court in which the divorce action was heard, only that "[a] joint owner of personal property must bring an action to partition the property in a court that has jurisdiction over the value of the property." Tex. Prop Code Ann. § 23.002(b) (Vernon 1984).

■ It appears that Ms. Mayes's argument that a bill of review is the appropriate remedy in this case is based on the premise that the lottery proceeds were divided pursuant to the residuary clause contained in the divorce decree:

*Property and Debts Not Listed*

IT IS FURTHER ORDERED AND DECREED, as a part of the division of the estate of the parties, that any community property or its value not otherwise awarded by this decree is awarded to the party in possession or in control of the property.

The residuary clause is not sufficient to dispose of the lottery proceeds. No where in the divorce decree are the lottery proceeds mentioned or referenced. In fact, it appears that the proceeds were not contemplated by trial court in the division of the Stewarts' community assets. At the hearing on the Stewarts' divorce action, both Mr. Stewart and Ms. Mayes testified that the proceeds belonged solely to Ms. Mayes, and Mr. Stewart had no interest in them. Therefore, the proceeds were not disposed of in the divorce decree. *See Koepke v. Koepke,* 732 S.W.2d 299, 300 (Tex.1987) (per curiam) (holding divorce decree's failure to expressly award military retirement benefits was failure to dispose of asset); *Moreno v. Alejandro,* 775 S.W.2d 735, 738–39 (Tex.App.-San Antonio 1989, writ denied) (finding recovery in lawsuit for medical expenses incurred during marriage, but recovered after the divorce, were subject to partition because they were not divided in the divorce decree);

---

**2.** The 11th District Court is the oldest district court in the State and has its roots in the

Republic of Texas.

*Yeo v. Yeo*, 581 S.W.2d 734, 737 (Tex.Civ. App.-San Antonio 1979, writ ref'd n.r.e.) (finding residuary clause insufficient to dispose of retirement benefits, which were not expressly mentioned in the property settlement agreement or divorce decree).

 In any event, Mr. Stewart did not have possession or control of the lottery proceeds after he gave Ms. Mayes the winning ticket and allowed her to claim the proceeds. "Possession" is physical control of the property or the power of immediate enjoyment and disposition of the property. *See Soto v. Soto*, 936 S.W.2d 338, 343 (Tex.App.-El Paso 1996, no writ); *Yeo*, 581 S.W.2d at 737–38 (finding interest in military retirement benefits was not possession). Two bank accounts were opened with the lottery proceeds: (1) a primary "parent" account to which Ms. Mayes was the only signatory, and (2) a smaller joint account to which Ms. Mayes and Mr. Stewart were joint signatories. Ms. Mayes wrote most of the checks and eventually refused to cover the overdraft in the joint account. Ms. Mayes's second issue is overruled.

## Res Judicata

 In her third issue, Ms. Mayes contends Mrs. Stewart's cause of action is barred by res judicata because the subject matter of the lottery winnings arises out of the same subject matter as the Stewarts' divorce. Res judicata precludes relitigation of claims which have been finally adjudicated, or that arise out of the same subject matter and could have been litigated in the prior action. *See Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 358 (Tex.1998) (per curiam). Res Judicata applies to a final divorce decree to the same extent that it applies to any other final judgment. *See Baxter v. Ruddle*, 794 S.W.2d 761, 762 (Tex.1990). The elements of res judicata are: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same

claims as were raised or could have been raised in the first action. *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996).

 We do not find res judicata applicable to this case. First, Texas courts hold that res judicata does not apply to post-divorce actions to partition where the divorce decree has not disposed of an asset. *See, e.g., Koepke*, 732 S.W.2d at 300; *Busby*, 457 S.W.2d at 554–55; *Moreno*, 775 S.W.2d at 739; *Eddy v. Eddy*, 710 S.W.2d 783, 785 (Tex.App.-Austin 1986, writ ref'd n.r.e.); *Yeo*, 581 S.W.2d at 739. As discussed above, the lottery proceeds were not before the trial court and were not divided in the divorce decree. Second, as already noted, Mrs. Stewart's claims against Ms. Mayes for fraud and conspiracy were brought independently of the divorce proceeding and were never litigated in the divorce action.

 Ms. Mayes also asserts res judicata as a party in privity to the earlier divorce action. Generally, parties are not bound by a judgment in a suit to which they were not parties. *See Amstadt*, 919 S.W.2d at 652 (citing Tex. Civ. Prac. & Rem.Code Ann. § 37.006(a)). Res judicata creates an exception by prohibiting a second suit arising out of the same subject matter of an earlier suit by those in privity with the parties to the original suit. *See id.* at 652–53. Parties can be in privity in three ways: (1) they can control an action even if they are not parties to it; (2) their interest can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action. *See id.* at 653.

 We fail to see how, Ms. Mayes, as an unrelated third party, can be in privity with either Mr. Stewart or Mrs. Stewart in so far as the divorce itself is concerned. Privity is not established by the mere fact that the persons may happen to be interested in the same question or in proving the same facts. *See Ayre v. J.D. Bucky Allshouse, P.C.*, 942 S.W.2d 24, 27

(Tex.App.-Houston [14th Dist.] 1996, writ denied).

■ Ms. Mayes also states Mrs. Stewart's claims are barred by collateral estoppel. Ms. Mayes has waived error with regard to this complaint in two ways. First, a review of the record reveals that Ms. Mayes never presented her collateral estoppel argument to the trial court. *See* TEX. R. APP. P. 33.1(a). Second, Ms. Mayes has not presented any argument or cited any authority or portions of the record in support of collateral estoppel. *See* TEX. R. APP. P. 38.1(h). Further, any argument under res judicata is not sufficient to include collateral estoppel in this case because, although related, (and often confused) they are not the same and may not be interchanged.[3] *See Ayre,* 942 S.W.2d at 27. Ms. Mayes's third issue is overruled.

### Fraud–Reliance

■ In her fourth issue, Ms. Mayes contends the trial court erred in not granting an instructed verdict on Mrs. Stewart's claim for fraud. In her fifth issue, she claims the trial court erred in submitting the issue of fraud to the jury. In her sixth issue, she asserts there is no evidence or insufficient evidence of fraud. Specifically, Ms. Mayes contends Mrs. Stewart failed to establish her reliance on any fraudulent statements in not claiming her community share of the lottery proceeds. The elements of fraud are: (1) a material misrepresentation, (2) that was false, (3) that was either known to be false when made or without knowledge of the truth, (4) that was intended to be acted upon, (5) that was relied upon, and (6) that caused injury. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex.1998). Ms. Mayes contests only the reliance element.

■ When reviewing a challenge to the legal sufficiency of the evidence, i.e., a "no evidence" issue, the reviewing court may consider only the evidence and inferences that support the challenged finding and should disregard all evidence and inferences to the contrary. *See ACS Inv., Inc. v. McLaughlin,* 943 S.W.2d 426, 430 (Tex.1997). If there is more than a scintilla of evidence to support the finding, the claim is sufficient as a matter of law, and any challenges merely go the weight of the evidence. *See Browning -Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993). There is some evidence when the proof supplies a reasonable basis upon which reasonable minds could reach different conclusions about the existence of a vital fact. *See Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex.1992) (per curiam).[4]

■ When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam). After considering and weighing all the evidence, we shall set aside the

3. Collateral estoppel is issue preclusion. *See Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 629 (Tex.1992). It prevents a party from relitigating an issue that it previously litigated and lost. *See Quinney Elec., Inc. v. Kondos Entertainment, Inc.,* 988 S.W.2d 212, 213 (Tex.1999) (per curiam). The elements of collateral estoppel are: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *See Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984).

4. Similarly, when reviewing a motion for an instructed verdict, we consider all of the evidence in a light most favorable to the non-movant, disregard all evidence and inferences to the contrary, and give the nonmovant the benefit of all inferences arising from the evidence. *See Knoll v. Neblett,* 966 S.W.2d 622, 627 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). If there is any conflicting evidence, an instructed verdict is improper and the issue must go to the jury. *See id.* With respect to the submission of issues to the jury, the trial court may decline to submit a relevant issue only if there is no evidence to support it. *See Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983).

verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). The jury as trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See Knox v. Taylor*, 992 S.W.2d 40, 50 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Because the appellate court is not the fact finder, it may not substitute its own judgment for that of the trier of fact, even if a different answer could be reached on the evidence. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). The amount of evidence necessary to affirm judgment is far less than that necessary to reverse a judgment. *See Knox*, 992 S.W.2d at 50.

▪ Ms. Mayes contends Mrs. Stewart may not rely on any statements made by her because Mrs. Stewart knew prior to the entry of the divorce decree that Mr. Stewart had won the lottery. "If the person to whom a false representation is made is aware of the truth, it is obvious that he is neither deceived nor defrauded, and, therefore, any loss he may sustain is not traceable to the representation but is self-inflicted." *Bynum v. Signal Ins. Co.*, 522 S.W.2d 696, 700 (Tex.Civ.App.-Dallas 1975, writ ref'd n.r.e.). In June 1993, friends of Mrs. Stewart informed her that Mr. Stewart had admitted to them that he had won the lottery. Mrs. Stewart testified, therefore, that by June 1993, she did not believe that Ms. Mayes had purchased the lottery ticket, but that Mr. Stewart might have purchased it. Furthermore, the following admissions were read to the jury:

> Admission No. 5: [A]t the time Willliam James Stewart filed his inventory in your divorce case you had already heard that William James Stewart had told individuals that he had actually won the lottery instead of Betty Mayes.

> Admission No. 12: [I]n September of 1993 you did not believe that Betty Lou Mayes won the lottery on May 1st, 1993 [sic].

▪ Mrs. Stewart claims, however, that she did not have actual knowledge of the fraud. Actual knowledge is inconsistent with the claim that the defrauded party has been deceived, and it negates the essential element of reliance upon the truth of the representation. *See Koral Indus., Inc. v. Security–Connecticut Life Ins. Co.*, 788 S.W.2d 136, 146 (Tex.App.-Dallas), *writ denied*, 802 S.W.2d 650 (Tex. 1990) (per curiam). " 'Where one has been induced to enter into a contract by fraudulent representations, the person committing the fraud cannot defeat a claim for damages based upon a plea that the party defrauded might have discovered the truth by exercising proper care.' " *Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex.1983) (quoting *Isenhower v. Bell*, 365 S.W.2d 354, 357 (Tex.1963)). Only actual knowledge is sufficient to defeat a claim for fraud. *Koral Indus., Inc.*, 788 S.W.2d at 146.

With respect to actual knowledge, the jury was instructed:

> You are further instructed that the party did not rely on a false representation if the party had actual knowledge that the representation was false.

> You are further instructed that a fraud cannot be committed against a party when:

> (a) The party has prior knowledge that the material representation is false.

The morning following the drawing, Mrs. Stewart spoke to her daughters by telephone. They told her Ms. Mayes had won the lottery. They testified at trial that Ms. Mayes had instructed them to tell Mrs. Stewart that she had won the lottery. A few weeks later, Ms. Mayes told Mrs. Stewart she had won the lottery. During the divorce proceedings, Mr. Stewart filed a sworn inventory with the court that omitted the lottery proceeds. At the divorce hearing, Ms. Mayes and Mr. Stewart testified under oath that Ms. Mayes had

won the lottery and Mr. Stewart had no interest in the proceeds. Mrs. Stewart testified with regard to her knowledge of the fraud:

Q. So as early as the month after May 3rd of 1996, you had information that Bill had won the lottery?

A. Right.

Q. You didn't know whether it was true or not, in fact, but you had that information?

A. Yes.

\* \* \*

A. No, it is not that I believed it. There was a possibility that that could have been Bill Stewart's ticket. There wasn't any way I could prove it at that time.

This position was not inconsistent with the following admission read to the jury:

Admission No. 19: [T]hat you have no personal knowledge of whether William James Stewart or Betty Lou Mayes bought the lottery ticket made a basis of your suit.

██ Ms. Mayes further contends the jury's finding that Mrs. Stewart knew or should have known of her legal injury in June 1993, supports her assertion that Mrs. Stewart's purported knowledge of the fraud vitiates her recovery for fraud. To the contrary, a jury finding that the defrauded party should have known, through the exercise of reasonable diligence, of the false representations is immaterial. *See Koral Indus., Inc.,* 788 S.W.2d at 146.

We find there is evidence to support the jury's finding that Mrs. Stewart relied on Ms. Mayes's fraudulent statements and that she did not have actual knowledge of Ms. Mayes's misrepresentations. Ms. Mayes's fourth, fifth, and sixth points of error are overruled.

### Fraudulent Concealment

██ In her seventh issue, Ms. Mayes asserts judgment cannot stand on a finding of fraudulent concealment. Fraudulent concealment is an affirmative defense to the statute of limitations. *See Weaver v. Witt,* 561 S.W.2d 792, 793 (Tex.1977) (per curiam). It is not an independent cause of action. *See Chandler v. Chandler,* 991 S.W.2d 367, 394 (Tex.App.-El Paso 1999, pet. denied). Here, recovery of damages was premised on a finding of "fraud or fraudulent concealment." The jury found Ms. Mayes had committed actionable fraud against Mrs. Stewart, thereby supporting the recovery of damages for fraud. Ms. Mayes's seventh issue is overruled.

### Conspiracy–Cause of Damages

██ In her eighth issue, Ms. Mayes claims the trial court erred in not granting an instructed verdict on conspiracy because Mrs. Stewart failed to prove her damages were the proximate result of the agreement to defraud her, i.e., that because Mrs. Stewart knew of the fraud underlying the conspiracy, she could not have suffered any damages because of the agreement. Civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose by unlawful means. *See Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983). The elements of conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages. *See id.*

Ms. Mayes asserts Mrs. Stewart entered into the divorce decree knowing of the conspiracy; therefore, any damages suffered were the result of her own actions. *See Bynum,* 522 S.W.2d at 700 (stating "[i]f the person to whom a false representation is made is aware of the truth, it is obvious that he is neither deceived nor defrauded, and, therefore, any loss he may sustain is not traceable to the representation but is self-inflicted"). As determined above, Mrs. Stewart did not have actual knowledge of the fraud underlying her conspiracy claim. Therefore, her conspiracy claim was not defeated. *See Isenhower,*

365 S.W.2d at 357; *Koral Indus., Inc.*, 788 S.W.2d at 146. Ms. Mayes's eighth issue is overruled.

### Conspiracy–Statute of Limitations

In her ninth issue, Ms. Mayes asserts the trial court erred in submitting Mrs. Stewart's conspiracy claim to the jury because it was time-barred by the statute of limitations. In her tenth issue, Ms. Mayes further challenges the legal and factual sufficiency of the evidence supporting the jury's finding that Mrs. Stewart's claim for conspiracy against Ms. Mayes and Mr. Stewart did not expire prior to April 2, 1997.[5] The jury found Mrs. Stewart knew or should have known of her legal injury in June 1993. Mrs. Stewart admitted she had heard in June 1993, that Mr. Stewart had purchased the winning ticket. Mrs. Stewart filed this suit on April 2, 1997.

The statute of limitations for conspiracy is two years. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.003(a) (Vernon Supp.1999); *Chandler*, 991 S.W.2d at 394. "[U]nder civil conspiracy, each continued invasion of the plaintiff's interest causing loss and damage in a conspiracy case is treated as an independent element for limitations purposes and the two year statute of limitations begins to run when each independent element arises." *Cathey v. First City Bank*, 758 S.W.2d 818, 822 (Tex. App.-Corpus Christi 1988, writ denied); *see also Harang v. Aetna Life Ins. Co.*, 400 S.W.2d 810, 813 (Tex.Civ.App.-Houston 1966, writ ref'd n.r.e.). A review of the record reveals several overt acts by Ms. Mayes in furtherance of the conspiracy occurring after April 2, 1995: (1) in October 1995, Ms. Mayes attempted to sell the final ten years of the lottery installments; (2) in April 1996, Ms. Mayes conveyed real property purchased with lottery funds; and (3) in 1996, Ms. Mayes wrote checks from the lottery proceeds.

Even if Mrs. Stewart's claim for conspiracy were time-barred, the jury found in favor of Mrs. Stewart on her fraud claim thus mooting the error, if any. Mrs. Stewart's damage finding was still supported by the independent claim. Ms. Mayes's ninth and tenth points of error are overruled.

### Local Rules

In her eleventh issue, Ms. Mayes claims the trial court erred in refusing to transfer the case to another court. Claiming common-law marriage, Mr. Stewart filed a divorce action against Ms. Mayes in the 247th District Court, Family Trial Division. Asserting a right in the proceeds of the lottery winnings, Mrs. Stewart filed as intervenor. Mrs. Stewart and Mr. Stewart nonsuited their respective actions. Subsequently, Mrs. Stewart filed the current case in the 11th District Court, Civil Trial Division. Ms. Mayes asserts the trial court was required to transfer the case to the family law court.

Local Rule 3.2.2 of the Civil Trial Division of the Harris County District Courts states with respect to the filing of nonsuited actions:

> Non-suit. If a case is filed in which there is a substantial identity of parties and causes of action as in a nonsuited case, the later case shall be assigned to the court where the prior case was pending.

Houston (Tex.) Civ. Dist. Ct. Loc. R. 3.2.2.[6]

---

**5.** The jury was provided with the following instructions:
> You are instructed that the limitations period within a which a civil action for conspiracy must be commenced in this state begins on the date of the completion of the last overt act asserted to have caused damage to the Plaintiff and ends two (2) years from that date.
> You are also instructed that if you find the last overt act causing damage to LOUELLA

R. STEWART was committed more than two (2) years before April 2, 1997, then you must further find that the cause of action for conspiracy expired prior to April 2, 1997, the date when the present action commenced.
> You are further instructed that each continued invasion of LOUELLA R. STEWART's interest causing loss and damage is in effect a new cause of action.

Ms. Mayes asserts the trial court's purported violation of Local Rule 3.2.2 is reversible error. *See Dancy v. Daggett,* 815 S.W.2d 548 (Tex.1991) (per curiam) (original proceeding); *United States Fire Ins. Co. v. Millard,* 838 S.W.2d 935 (Tex.App.-Houston [1st Dist.] 1992, orig. proceeding). We disagree. *Dancy* and *Millard* are distinguishable. In *Dancy,* the trial court conducted a hearing, in a divorce action, knowing that the attorney representing the husband had to appear in another court. *See Dancy,* 815 S.W.2d at 549. The Texas Supreme Court found the trial court had violated a local rule regarding conflicts in docket settings, which effectively denied the husband of representation during the divorce hearing. *See id.* In *Millard,* the court determined the trial court's striking of the defendant's pleadings as a discovery sanction without notice violated local rules, which provided that all motions must be submitted with a notice of submission or hearing and, accordingly, conditionally granted mandamus relief. *See Millard,* 838 S.W.2d at 938. Here, Ms. Mayes was neither denied representation at trial nor denied the opportunity to defend Mrs. Stewart's claims against her.

■■■ Mrs. Stewart contends Local Rule 3.2.2 does not apply here. She explains that the civil and family trial divisions each maintain local rules and, therefore, logically apply only to cases being refiled in the same division. We agree. Section 74.093(d) of the Government Code provides, in relevant part: "Rules relating to the transfer of cases or proceedings shall not allow the transfer of cases from one court to another unless the cases are with-

in the jurisdiction of the court to which it is transferred." TEX. GOV.CODE ANN. § 74.093(d) (Vernon 1998).[7] Without Mr. Stewart's divorce action against Ms. Mayes in the family district court, Mrs. Stewart's independent tort claims against Ms. Mayes and suit to partition under TEX. PROP.CODE ANN. § 23.001 properly belonged in civil district court. *See* TEX. GOV.CODE ANN. § 24.601(b) (Vernon 1988) (listing matters for which family district court has primary responsibility) & § 24.601(c) (stating that this subchapter does not limit the jurisdiction of other district courts or relieve them of responsibility of handling cases involving family law matters).

Ms. Mayes has not shown any error by the trial court in failing to transfer this case to the family district court. Even if the trial court had erred, Ms. Mayes has not shown such error is reversible. *See* TEX. R. APP. P. 44.1.[8] Ms. Mayes's eleventh issue is overruled.

### Trial Court's Refusal to Submit Question

■■■ In her twelfth issue, Ms. Mayes complains of the trial court's refusal to submit a jury question inquiring what percentage of the purchase price of the lottery ticket was Mr. Stewart's community property. Rule 278 requires the trial court to submit requested questions to the jury if supported by the pleadings and the evidence. *See* TEX. R. CIV. P. 278; *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992). Otherwise, the trial court has great discretion in submitting jury questions. *See Bank One, Texas, N.A. v. Stewart,* 967 S.W.2d 419, 431 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). If we find error

---

**6.** The Harris County Family Trial Division has an identical rule, with the additional provision that when such a situation is disclosed, the court shall order the suit transferred to the court in which the original suit was pending. *See* HOUSTON (TEX.) DIST. CT., FAMILY TRIAL DIV. LOC. R. 3.2.2.

**7.** We are not suggesting the Family court did not also have jurisdiction over this matter.

**8.** We further note that if Ms. Mayes believed jurisdiction in the 11th District Court was not proper, she could have sought mandamus relief, but failed to do so. *See George v. Phillips Petroleum Co.,* 976 S.W.2d 363, 365 n. 5 (Tex. App.-Houston [14th Dist.] 1998, no pet.).

in the charge, we then review the pleadings, evidence, and the entire charge to determine if the error is harmful. *See Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986). The complaining party must establish that the error amounts to such a denial of her rights as was reasonably calculated to cause and probably did cause rendition of an improper judgment. *See Autry v. Dearman,* 933 S.W.2d 182, 188 (Tex.App.-Houston [14th Dist.] 1992, writ denied). A judgment must be reversed when a party is denied proper submission of a valid theory of recovery or a vital defensive issue raised by the pleadings and evidence, if timely raised and properly requested as part of the charge. *See id.* (citing *Exxon Corp. v. Perez,* 842 S.W.2d 629, 631 (Tex.1992) (per curiam)).

Ms. Mayes's proposed question asked:

Form [sic] a preponderance of the evidence, state what percentage (%) of the funds used to purchase the winning lottery ticket, if any, was community property of WILLIAM STEWART and LORETTA [sic] STEWART.

■ A review of the charge to the jury reflects that a question regarding what funds were used to purchase the lottery ticket was submitted to the jury:

Do you find, from a preponderance of the evidence, that WILLIAM J. STEWART purchased the winning lottery ticket on May 1, 1993 with his community property?

The trial judge, the Honorable Mark Davidson, properly submitted the controlling question to the jury. He is not required, and in fact should not, submit different shades of the same question. *See* Tex.R. Civ. P. 278. Ms. Mayes, therefore, has failed to establish any error in the trial court's refusal to submit her requested question. Ms. Mayes's twelfth issue is overruled.

### Trial Court's Refusal to Submit Instruction

■ In her thirteenth issue, Ms. Mayes complains of the trial court's refusal

to submit a requested instruction. The trial court has considerably more discretion in submitting instructions and definitions to the jury than in submitting questions. *See M.N. Dannenbaum, Inc. v. Brummerhop,* 840 S.W.2d 624, 631 (Tex. App.-Houston [14th Dist.] 1992, writ denied). While the trial court must explain legal or technical terms, its discretion in determining the sufficiency of such explanations is broad. *See id.* (citing *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 256 (Tex.1974)). Any alleged error must be shown to have caused or can be reasonably calculated to have caused the rendition of an improper verdict. *See id.*

Ms. Mayes's proposed instruction stated, in relevant part:

You are further instructed that a fraud cannot be committed against a party when:

a. That party does not believe the material representation; or

b. The party has prior knowledge that the material representation is false; or

c. The party makes their own investigation of the facts; or

d. The representation is made after the transaction is complete.

Ms. Mayes's proposed instruction misstates the law. As determined above, Mrs. Stewart did not have actual knowledge of the fraud. Only actual knowledge negates the element of reliance. *See Koral Indus., Inc.,* 788 S.W.2d at 146. Also, Ms. Mayes cannot defeat Mrs. Stewart's fraud claim on the ground that Mrs. Stewart might have discovered the truth by conducting her own investigation, particularly when Ms. Mayes continued to represent to Mrs. Stewart and to the court, when she testified under oath, that she owned the ticket. *See Trenholm,* 646 S.W.2d at 933; *Isenhower,* 365 S.W.2d at 357. Ms. Mayes's thirteenth issue is overruled.

### Admission of Evidence

■ In her fourteenth issue, Ms. Mayes contends the trial court abused its

discretion in allowing the Stewarts' children to testify when their address and phone number had not been listed in Mrs. Stewart's answers to Ms. Mayes's interrogatories. Former Rule 215(5) of the Texas Rules of Civil Procedure provides:

> A party who fails to respond or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matters, unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and must be shown in the record.

TEX. R. CIV. P. 215(5), 733–34 S.W.2d (Tex. Cases) LXIV (1987, amended 1998). The rule is mandatory and its sole sanction, the exclusion of evidence, is automatic unless good cause was shown to excuse the imposition of the sanction. *See Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 914 (Tex. 1992).

 It is within the trial court's discretion to determine whether the party offering the evidence has established good cause. *See Aluminum Co. of Am. v. Bullock,* 870 S.W.2d 2, 3 (Tex.1994). The trial court abuses its discretion if its action was arbitrary and unreasonable, without reference to any guiding rules or principles. *See id.* at 3.

In Mrs. Stewart's answers, the Stewarts' three minor daughters were disclosed as witnesses with a reference to Mrs. Stewart's attorney for their address and phone number. Ms. Mayes asserts that without the children's address and phone number, she could not contact the children, their school, or their neighbors in order to prepare for their testimony.

 We find Mrs. Stewart established good cause because it would have been inappropriate for Ms. Mayes or her attorney to independently contact the girls, who were 14, 13, and 11 years old at the time of trial, outside the presence of their parents or their parents' attorneys. Further evidence in the form of Mr. Stewart's testimony indicated he thought Ms. Mayes had disciplined the girls inappropriately; one of the girls similarly testified that she is still afraid of appellant.

 Even absent good cause, Ms. Mayes still has the burden of establishing that such error was harmful. *See* TEX. R. APP. P. 44.1. The oldest daughter, Charlene, testified that she was with Mr. Stewart when he purchased the lottery ticket and she helped him pick out the winning numbers. She also testified Ms. Mayes told her what to say to Mrs. Stewart when she spoke to her the morning after the drawing. The substance of the testimony of the other daughters, April and Nicole, was that Ms. Mayes and Mr. Stewart told them the night of the drawing that Mr. Stewart had purchased the ticket and had won the lottery. This testimony is merely cumulative of the testimony of several unrelated witnesses that Ms. Mayes and Mr. Stewart had stated that Mr. Stewart had purchased the ticket and picked out the numbers, but that Ms. Mayes was claiming the ticket in order to defraud Mrs. Stewart. Ms. Mayes's fourteenth issue is overruled.

### Statute of Limitations under the Family Code

 In her fifteenth point or error, Ms. Mayes asserts that Mrs. Stewart's claims are barred by § 9.202(a) of the Texas Family Code, which states:

> A suit under this subchapter must be filed before the second anniversary of the date a former spouse unequivocally repudiates the existence of the ownership interest of the other former spouse and communicates that repudiation to the other former spouse.

TEX. FAM.CODE ANN. § 9.202(a) (Vernon 1998) (former TEX. FAM.CODE ANN. § 3.90(c)). Ms. Mayes claims Mrs. Stewart was required to bring this lawsuit with-

in two years of November 9, 1993, when Mr. Stewart repudiated Mrs. Stewart's ownership in the lottery proceeds.

This argument is premised on Ms. Mayes's mistaken belief that Mrs. Stewart brought her partition action pursuant to TEX. FAM.CODE ANN. § 9.201 (Vernon 1984). Section 9.202 does not apply to suits to partition under TEX. PROP.CODE ANN. § 23.001. *See Phillips,* 951 S.W.2d at 957; *Carter v. Charles,* 853 S.W.2d 667, 671 (Tex.App.-Houston [14th Dist.] 1993, no writ). The *"right to partition is absolute."* *See Phillips,* 951 S.W.2d at 957 (emphasis in the original); *Ware v. Ware,* 809 S.W.2d 569, 571 (Tex.App.-San Antonio 1991, no writ). Similarly, nothing in § 9.202 suggests that it applies to tort claims against third parties. Ms. Mayes's fifteenth issue is overruled.

Because of our disposition of appellant's issues, we need not address Mrs. Stewart's cross appeal.[9] Accordingly, the judgment of the trial court is affirmed.

---

**9.** Mrs. Stewart brings her own appeal asserting that the trial court erred in not disregarding the jury's answer that she knew or should have known, by the exercise of ordinary care, on June 1993, of her legal injury. Her appeal is contingent solely on this court finding reversible error in favor of Ms. Mayes.