IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00311-CV

 

Tom Matis and Gary Sorenson,

                                                                      Appellants

 v.

 

Mark Golden, Brian Kosoglow,

and Jonathan Deming,

                                                                      Appellees

 

 

 



From the 361st District Court

Brazos County, Texas

Trial Court No. 02-002559-CV-361

 



Opinion



 








          Mark Golden, Brian Kosoglow, and
Jonathan Deming recovered a judgment against Tom Matis and Gary Sorensen for
fraud.  Matis and Sorensen appeal on the following grounds: (1) the court erred
by denying Matis’s special appearance; and (2) the evidence is legally and
factually insufficient to support the court’s judgment.  We affirm.

JURISDICTION

          In point one, Matis contends that the
court erred by denying his special appearance.  The court signed the order
denying Matis’s special appearance on June 27, 2003.  Matis did not file a
notice of appeal until August 2005.  An appeal of an order granting or denying
a special appearance is an interlocutory appeal which must be perfected by
filing a notice of appeal within twenty days after the ruling.  See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon Supp. 2006); see also
Tex. R. App. P. 26.1(b); In re
K.A.F., 160 S.W.3d 923, 927 (Tex. 2005); Denton County v. Huther, 43 S.W.3d 665, 666-67 (Tex. App.—Fort Worth 2001, no pet.).  Matis’s
attempted appeal from the denial of his special appearance is untimely, and we
do not have jurisdiction to address it.  Accordingly, we dismiss Matis’s first
point for want of jurisdiction.  See In re S.R.O., 143 S.W.3d 237, 248 (Tex. App.—Waco 2004, no pet.).

LEGAL AND FACTUAL SUFFICIENCY

In point two, Matis
and Sorensen challenge the legal and factual sufficiency of the evidence to
support the court’s finding that they committed fraud.

A legal sufficiency
challenge requires consideration of “whether the evidence at trial would enable
reasonable and fair-minded people to reach the verdict under review.”  City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  We “must credit
favorable evidence if reasonable jurors could, and disregard contrary evidence
unless reasonable jurors could not.”  Id.  This standard also applies to
a court’s findings made in a bench
trial.  See Bank of Am. v. Hubler, 211 S.W.3d 859, 862 (Tex. App—Waco
2006, pet. granted, judgm’t vacated w.r.m.); see also Ludwig v. Encore Med.,
L.P., 191 S.W.3d 285, 294 (Tex. App.—Austin 2006, pet. denied); Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).

A factual sufficiency challenge
to issues on which the appellant did not bear the burden of proof requires us
to “consider and weigh all of the evidence.”  Checker Bag Co. v. Washington, 27 S.W.3d 625, 633 (Tex.
App.—Waco 2000, pet. denied).  We will reverse the “verdict only if it is so contrary
to the overwhelming weight of the evidence that the verdict is clearly wrong
and unjust.”  Id.  On issues
where the appellant “bears the burden of proof,” we will reverse only if,
“considering all the evidence, the finding is so contrary to the great weight
and preponderance of the evidence as to be manifestly unjust.”  Id.

A fraud claim is comprised of the following
elements:

(1) a material representation was made; (2) the
representation was false; (3) when the representation was made, the speaker
knew it was false or made it recklessly without any knowledge of the truth and
as a positive assertion; (4) the speaker made the representation with the
intent that the other party should act upon it; (5) the party acted in
reliance on the representation; and (6) the party thereby suffered injury.

 

Johnson
v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 211 n.45 (Tex. 2002) (quoting
In re
First Merit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001) (orig. proceeding)); Long v. Tanner, 170 S.W.3d 752, 754 (Tex. App.—Waco 2005, pet. denied).

In support of their legal and factual
sufficiency challenges, Matis and Sorensen argue that: (1) Golden and Deming
cannot recover for fraud because they learned of the investment through
Kosoglow and neither appeared nor testified at trial; and (2) the evidence does
not support a finding of materiality, falsity and/or recklessness, fraudulent
intent, or reliance.  

Failure to Appear and Testify

According to the record, Matis first learned of
the investment through his friend Ron Weaver.  The investment involved a
company known as Waste Tech.  Information regarding the investment then initially
passed from Matis
to Sorensen, from Sorensen to Kosoglow, and from Kosoglow to Golden and Deming.  The specific information conveyed was that the
investment would yield monthly returns or invested funds would be refunded.  Kosoglow,
Golden, and Deming each invested $25,000 in the investment.  Invested funds
were wired to the Emerald Noble Holding Trust and eventually transferred to
Donald Richards, a California attorney responsible for preparing the investment
documents.  However, at no time did Kosoglow, Golden, and Deming receive any
returns or refunds.  Only Kosoglow provided live testimony at trial.[1] 
Because Golden and Deming were out of state and unable to appear and testify at
trial, Matis and Sorensen contend that Golden and Deming cannot recover for
fraud.    

The
Texas Supreme Court has specifically considered whether fraud requires a “direct relationship between the alleged
fraudfeasor and a specific known person -- commonly referred to in this context
as ‘privity,’” and determined that such privity is not required.  Ernst & Young, L.L.P. v. Pac. Mut. Life Ins.
Co., 51 S.W.3d 573, 574, 580 (Tex. 2001).  Fraud “exists where the false
representation was made with the intent of reaching and deceiving a third
person and thereby caused that third party injury; privity is not required
between the fraudfeasor and the person he is trying to influence.”  In re
Enron Corp Sec.,
388 F. Supp. 2d 780, 784 (S.D. Tex. 2005) (citing Ernst
& Young, 51
S.W.3d at 578-80).  Accordingly, it is immaterial that a direct
relationship does not exist between Golden, Deming, Matis, and Sorenson.  See
id; see also Ernst
& Young, 51 S.W.3d at 578-80.

Furthermore, it makes sense that Golden and
Deming could rely on Kosoglow’s testimony as circumstantial evidence supporting
their own fraud claims.  “Fraud is usually not discernible by direct evidence and is usually so covert or attendant with such attempts at
concealment as to be incapable of proof other than by circumstantial evidence.”
 Cotten v.
Weatherford Bancshares, Inc., 187 S.W.3d 687, 707 (Tex. App.—Fort Worth 2006, pet.
denied).  Kosoglow
could properly testify to Matis’s
and Sorensen’s representations.  See Tex.
R. Evid. 801(e)(2).  He could also testify to the facts of the case.  Additionally,
Golden’s deposition testimony was admitted at trial and the record contains documentary
evidence pertaining to Golden and Deming’s claims.  Therefore, we cannot agree
that Golden and Deming are not entitled to recover by virtue of being unable to
appear and testify at trial.

Materiality

Actionable representations must
involve material facts, not mere opinion or puffery.  See Prudential Ins. Co. of Am. v.
Jefferson Assocs.,
896 S.W.2d 156, 163 (Tex. 1995).  “A representation is ‘material’ if it is
important to the party to whom it is made in making a decision regarding
the particular transaction.”  Burleson State Bank v. Plunkett, 27 S.W.3d 605, 613 (Tex.
App.—Waco 2000, pet. denied).  “‘Material means a reasonable person would attach
importance to and would be induced to act on the information in determining his
choice of actions in the transaction in question.’”  Id.  (quoting Beneficial
Pers. Servs. v. Porras, 927 S.W.2d 177, 186 (Tex. App.—El Paso 1996, writ granted, judgm’t vacated
w.r.m.)).

“Whether a statement is an
actionable statement of ‘fact’
or merely one of ‘opinion’
often depends on the circumstances in which a statement is made.”  Transport Ins. Co. v. Faircloth, 898 S.W.2d 269, 276 (Tex. 1995).  Relevant circumstances
include “the statement’s specificity, the speaker’s knowledge, the comparative
levels of the speaker’s and the hearer’s knowledge, and whether the statement
relates to the present or the future.”
 Id.  Even an
opinion may be actionable if: (1) it is “intertwined” with “direct representations of
present facts;”
(2) “the speaker has knowledge of its falsity;” (3) it
is “based on past or present
facts;” or (4) the speaker has “special
knowledge of facts that will occur or exist in the future.”  Trenholm v. Ratcliff, 646 S.W.2d 927, 930-31 (Tex. 1983).  “When
a speaker purports to have special knowledge of the facts, or does have
superior knowledge of the facts--for example, when the facts underlying the
opinion are not equally available to both parties--a party may maintain a fraud
action.” 
Paull v.
Capital Res. Mgmt., Inc., 987 S.W.2d 214, 219 (Tex. App.—Austin 1999, pet. denied).

It appears from the record that
Matis and Sorensen specifically represented
that (1) invested
funds were refundable; and (2) returns
would be paid monthly, beginning shortly after the initial investment, and amount
to one hundred percent for ten months.  There is no doubt, given that no
returns or refunds have been realized, that these representations were false.  Yet,
Matis and Sorensen contend that they were merely relaying information and that
these representations are mere statements of opinion.  We disagree.

These are not the type of representations that generally
amount to mere puffery or opinion. 
See Paull, 987 S.W.2d at 218-19
(statements that an investment was “low risk” and would “produce large revenues for a
long time” are merely “‘puffing,’ or dealers’ talk”); see also Faircloth, 898 S.W.2d at 276 (representing a settlement as “top
dollar” is mere opinion); Prudential, 896 S.W.2d at 163 (“superb,” “super fine,” and “one of the finest little
properties in the City of Austin” are not actionable statements).  Nor were
they presented as predictions or results contingent on the happening of some
other event.  These were specific statements of material fact regarding the existing terms of the investment.  See Faircloth, 898 S.W.2d at 276.

Moreover, the record indicates that Matis and
Sorensen were not merely relaying information, but their representations were
made with special knowledge.  Although Sorensen testified to acting solely as a
liaison, Kosoglow, Golden, and Deming were dependent on Matis and Sorenson for
information regarding the investment.  Kosoglow testified that Matis and
Sorensen appeared well informed and provided considerable detail about the
investment, including its inner workings, what happened to the invested funds
and where they were transferred, and the manner in which returns would be
received.  Matis and Sorensen pointed Kosoglow, Golden, and Deming in the
direction of a specific financial institution where they could open an account
for receiving returns.  When
the investment yielded no returns, Matis and Sorensen explained that all the
required funding had not been received in order to make the initial trade.  They then informed Kosoglow, Golden, and Deming
of a second available trade.    

According to Sorensen, all information came from
those higher up the chain of command.  However, Matis and Sorensen had access
to these individuals.  One such person, Ron Weaver, communicated with both
Matis and Sorensen.  Weaver and Sorensen testified that Matis was involved in
raising the financing to move the investment forward.  Weaver knew that Matis
was contacting potential investors, including Kosoglow, Golden, and Deming.  When
Matis and Sorensen referred Kosoglow, Golden, and Deming to Weaver, Weaver
instructed them to communicate with Matis and Sorensen alone so as not to
“jeopardize the trade.”  Weaver confirmed what Matis and Sorensen had previously
explained.

Kosoglow testified that he had never previously
invested and knew nothing about the investment other than information provided
by Matis and Sorensen.  In fact, Matis and Sorensen knew Kosoglow, Golden, and
Deming were interested in the investment.  The information Matis and Sorensen
provided was in response to this interest.  Following the initial investment,
Matis and Sorensen continued providing information.  The record contains
several emails from Sorensen whereby he and Matis provided status reports and
presented ideas for obtaining refunds.  At one point, Sorensen responded to
questions lodged by Deming’s father.  Matis and Sorensen also met with Weaver
via telephone to discuss potential ways to obtain refunds, some of which
involved Matis’s and Sorensen’s participation.  Accordingly, the
record reflects that Matis and Sorensen were not merely relaying information,
but possessed access to unique information regarding the investment process to
which Kosoglow, Golden and Deming did not have equal access.  See Paull, 987 S.W.2d at 219.  In such a case, even if Matis’s and Sorensen’s
representations amounted to mere opinions, they are actionable.  See id.

Furthermore, Kosoglow testified
that the profitable returns made him want to invest and that he probably would
not have invested absent the representations.  He and Golden both testified to
investing based on these representations and that being able to obtain a refund
was an important factor influencing the decision to invest.  See Plunkett,
27 S.W.3d at 613.  Wire transfers contained in the record indicate that all
three men contributed substantial sums of their own money to the investment.  Any
reasonable person would attach importance to representations that an investment
would produce monetary results, with no apparent financial loss, and would
likely formulate a decision based on these representations.

In light of the evidence
contained in the record,
the court could reasonably conclude that Matis and Sorensen made actionable
material representations of fact to Kosoglow, Golden, and Deming regarding the
terms of the investment.  See
City of Keller, 168 S.W.3d at
827.




Falsity and/or Recklessness

“A statement is not fraudulent unless the speaker knew it
was false when made or the speaker made it recklessly without knowledge of its
truth.” 
Plunkett, 27 S.W.3d at 613 (citing Prudential, 896 S.W.2d at 163).  Representations are also reckless if made without “sufficient
information or basis
to support
them.”  Trenholm, 646 S.W.2d at 933.  “An unqualified statement that a fact
exists, made for the purpose of inducing another to act upon it, implies that the one who
makes it knows it to be true and speaks from such knowledge.”  Baber v. Pioneer Concrete, 919 S.W.2d 664, 667 (Tex.
App.—Fort Worth 1995, writ dism’d).  “If the facts represented do not exist, and the person states of his
own knowledge that they do, and induces another to act upon his statement, the
law imputes to him a fraudulent purpose.”  Id.  Recklessness may be proved by “direct or circumstantial
evidence.”  Plunkett,
27 S.W.3d at 613.  

Although Matis also invested, he
received no returns or refunds.  He testified that he believed the investment
would take place as represented and would not have invested had he known that there
would be no returns or that his money would not be refunded.  He also testified
that, in hindsight, he “probably would have been a little bit more cautious.”  While
Matis’s and Sorensen’s representations were not necessarily made with knowledge
of their falsity, the record does contain evidence that their representations
were at least made recklessly.

According to the record, Matis and Sorensen did not personally guarantee any
money and there were no written guarantees in place at the time the
representations were made.  Matis, Sorensen, and Weaver all testified that
someone named Alice Brooks had verbally indicated that she would guarantee the
money.  At no time were any guarantees placed in writing.  Moreover, wiring money was
not the only prerequisite for receiving returns.  A total amount of money had
to be collected in order for the investment to move forward and produce returns.

The record is unclear as to whether, at the time
the representations were made, Matis and Sorensen were aware that making the
trade and receiving returns was contingent on obtaining all required funding. 
They may also have been unaware that there were no written guarantees or that
any such guarantees were uncertain.  In either case, they apparently left the
impression that they possessed personal knowledge of the details of the
investment and that the facts as represented were true.  See Baber, 919 S.W.2d at 667.  It
appears that Matis and Sorensen possessed insufficient information on which to
base their representations.  See
Trenholm, 646 S.W.2d at 933.  The court could reasonably conclude that they did
not understand the investment’s process and therefore acted recklessly by
misinforming Kosoglow, Golden, and Deming regarding the investment’s terms.  See Plunkett, 27 S.W.3d at 613.

Matis and Sorensen argue that this result
imposes upon them a duty to investigate the investment prior to making any representations. 
They contend that investments “involve a certain degree of risk;” thus, “any
college graduate, such as the Appellees were shown to be, would know this and
should have known that an expected rate of return in excess of 1200 per cent
per year would involve a high degree of risk.”  However, because Matis’s and
Sorensen’s positive representations negated any perceived “degree of risk,” we
cannot say that Kosoglow, Golden, and Deming were in possession of any facts
that would have led them to question the representations made.  Moreover, whether
Matis and Sorensen possessed a duty to investigate is not the proper inquiry.  The
issue is whether a representation is made falsely or recklessly.  See Plunkett, 27 S.W.3d at 613; see also
Prudential, 896 S.W.2d at 163.  The record contains evidence supporting the
court’s finding that Matis’s and Sorensen’s representations were made
recklessly without any knowledge of their truth.  See City of Keller, 168 S.W.3d at 827.

Intent

A representation must be intended to “induce action.”  Plunkett, 27 S.W.3d at 613.  Intent “is determined at the time the
party made the representation” and “may also be inferred from subsequent acts.” 
 Id.  “Intent is a fact question uniquely within the realm of the trier
of fact because it so depends upon the credibility of the witnesses and the
weight to be given to their testimony.”  Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex. 1986).

Although the representations
regarding the investment never developed, Matis and Sorensen contend that their
subsequent failure to perform cannot establish intent.  It is correct that “failure
to perform, standing alone, cannot establish fraudulent intent.”  Columbia/HCA Healthcare Corp.
v. Cottey, 72
S.W.3d 735, 745 (Tex. App.—Waco 2002, no pet.) (emphasis added); see Spoljaric, 708 S.W.2d at 435.  However, “slight
circumstantial evidence of fraud, when considered with the breach of a promise
to perform, is sufficient to support a finding of fraudulent intent.”  Cottey, 72 S.W.3d at 745; see Spoljaric, 708 S.W.2d at 435.

Matis and Sorensen also place
some emphasis on the fact that they derived no benefit from the transaction.  They
contend that they “had no control over the investment and had no relationship
with the company or principles theorof.”  However, “‘all who participate are
liable for the fraud, . . . irrespective
of proof that they shared in the profits, for the gravamen of the action is
injury to plaintiff and not
benefit to defendant.’”  Corpus Christi Area Teachers Credit Union v. Hernandez, 814 S.W.2d 195, 198 (Tex.
App.—San Antonio 1991, no writ) (quoting Crisp
v. Southwest Bancshares Leasing Co., 586 S.W.2d 610, 615 (Tex. Civ. App.—Amarillo
1979, writ ref’d n.r.e.)) (emphasis added); see Crawford v. Ancira, No. 04-96-00078-CV, 1997 Tex. App. Lexis 2263, at
*8 (Tex. App.—San Antonio April 30, 1997, no pet.) (not designated for
publication).  A
plaintiff need not prove that the defendant derived a benefit in order to
maintain a fraud claim.  See Crawford, 1997 Tex. App. Lexis 2263, at *8-9.

Given Matis’s involvement in
raising financing to move the investment forward, it is doubtful that he had any other intent but that
Kosoglow, Golden, and Deming invest.  The record is not entirely clear as to
whether Sorensen directly assisted in these efforts, although he testified that
he and Matis had discussed ways to raise funds for certain business ventures. 
Nevertheless, Sorensen at least participated in obtaining Kosoglow, Golden, and
Deming’s investment.  He and Matis told Kosoglow, Golden, and Deming that funds must be
invested by a certain date in order to join the investment.  Sorensen admitted
that this is often a tactic of scams.  When
the investment yielded no returns, Matis and Sorensen did not act expeditiously
to obtain refunds.  It appears they attempted to stall, offering multiple
reasons why the investment yielded no returns and making proposals for
obtaining refunds, none of which ever developed.  Almost in an effort to
persuade Kosoglow, Golden, and Deming to remain in the investment, Matis and
Sorensen continuously asserted that the investment would generate results and
questioned why Kosoglow, Golden, and Deming wanted a refund when the investment
was about to produce.  In light of Matis’s and Sorensen’s prior and subsequent
actions, the record contains evidence of intent.

The trial court could have inferred that Matis’s and
Sorensen’s representations were made with the intent to induce Kosoglow,
Golden, and Deming to invest.  See Spoljaric, 708 S.W.2d at 434; see also Plunkett, 27 S.W.3d at 613; City of Keller, 168 S.W.3d at 827.

Reliance

A plaintiff must “demonstrate that he relied upon the fraudulent
misrepresentation to his detriment.”  Plunkett, 27 S.W.3d at 614; see Ernst & Young, 51 S.W.3d at 577.  Reliance is established by showing that the defendant’s actions and
representations induced the plaintiff “to act or to refrain from action.”  Ernst & Young, 51 S.W.3d at 577.

Prior to investing, Kosoglow, Golden, and Deming
spoke with Weaver.  Matis and Sorensen contend this conversation amounts to
conducting an investigation.  Actual
knowledge of false representations is “inconsistent with the claim that
the allegedly defrauded party has been deceived, and it negatives the essential
element of reliance upon the truth of the representations.”  Koral
Indus. v. Sec.-Connecticut Life Ins. Co., 788 S.W.2d 136, 146 (Tex. App.—Dallas 1990,
writ denied); Mayes
v. Stewart, 11
S.W.3d 440, 451 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

 It is not the rule that a person injured by
the fraudulent and false
representations of another is held to the exercise of diligence to suspect
and discover the falsity of such statements. In the absence of knowledge to the
contrary, he would have a right to rely and act upon such statements, and
certainly the wrongdoer in such a case cannot be heard to complain that the
other should have disbelieved his solemn statements. 

 

Koral
Indus. v. Sec.-Connecticut Life Ins. Co., 802 S.W.2d 650, 651 (Tex. 1990)[2]
(quoting W.
Cottage Piano & Organ Co. v. Anderson, 101 S.W. 1061, 1064 (Tex. Civ. App.—Fort
Worth 1907, writ denied)).

Assuming without deciding that
this conversation amounts to undertaking an investigation, there is no
indication that Kosoglow, Golden,
and Deming were placed on notice of the falsity of any representations.  See Koral, 788 S.W.2d at 146; see
also Mayes, 11 S.W.3d at 451.  Weaver merely repeated the
information previously conveyed by Matis and Sorensen.  There is no evidence in
the record suggesting that the conversation Kosoglow, Golden, and Deming had
with Weaver gave any indication that Matis’s and Sorensen’s representations
were false.  Absent such actual knowledge, Kosoglow, Golden, and Deming were
entitled to rely on Matis’s and Sorensen’s representations and were not
required to “suspect and discover” any falsities.  Koral, 802 S.W.2d at
651.

Moreover, the record establishes that these
representations caused Kosoglow, Golden, and Deming to invest.  Kosoglow
testified that these representations were important to his decision, he relied
on these representations, and he would not have invested but for these
representations.  Golden also testified to relying on these representations.  Kosoglow, Golden, and Deming
each wired $25,000 to the required location in order to join the project.  It
is doubtful that this decision was in no way influenced by the possibility of
receiving substantial returns and the assurance of obtaining a refund should
the investment fail.  Accordingly, the record contains evidence supporting a
finding of reliance.  See Plunkett, 27 S.W.3d at 614; see also
Ernst & Young, 51 S.W.3d at 577;
City of Keller, 168 S.W.3d at
827.

In summary, there is
evidence in the record whereby the court could reasonably conclude that Matis
and Sorensen committed fraud.  See City of Keller, 168 S.W.3d at 827.  The judgment is not “so contrary to the overwhelming
weight of the evidence that the verdict is clearly wrong and unjust.”  Checker Bag, 27 S.W.3d at 633.  Because
the evidence is legally and factually sufficient to support the trial court’s
findings, we overrule point of error number two.

The
judgment is affirmed.

 

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurring)

Affirmed 

Opinion delivered and
filed May 16, 2007

[CV06]









[1]           The court sustained Matis’s and
Sorensen’s objection to Kosoglow’s testimony regarding whether Golden and
Deming relied on Matis’s and Sorensen’s representations.





[2]           This is the Supreme Court’s per
curiam opinion denying writ in Koral
Indus. v. Security-Connecticut Life Ins. Co., 788 S.W.2d 136, 146 (Tex. App.—Dallas 1990,
writ denied).