ACCEPTED
07-15-00063-CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
4/17/2015 11:32:15 AM
Vivian Long, Clerk

CAUSE NO. 07-15-00063-CV

IN THE

SEVENTH COURT OF APPEALS

AMARILLO, TEXAS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
4/17/2015 11:32:15 AM
VIVIAN LONG
CLERK

SIWELL, INC. D/B/A CAPITAL MORTGAGE SERVICES
Appellant

V.

JEFF W. WATTS
Appellee

On appeal from the County Court at Law Number 3 of Lubbock County, Texas

APPELLANT'S BRIEF

Respectfully Submitted,

*LAW OFFICE OF KEITH C. THOMPSON, P.C.*

11003 Quaker Avenue
Lubbock, Texas 79424
Telephone: (806) 783-8322
Facsimile: (806) 783-8357
Email: kct@kctlaw.us

By:  /s/ Keith C. Thompson
Keith C. Thompson
SBN: 24013631
*ATTORNEY FOR APPELLANT/PLAINTIFF*

*ORAL ARGUMENT IS REQUESTED*

## IDENTITY OF PARTIES AND COUNSEL

SIWELL, INC. D/B/A CAPITAL MORTGAGE SERVICES
Represented by:

    Keith C. Thompson
    Law Office of Keith C. Thompson, P.C.
    11003 Quaker Avenue
    Lubbock, Texas 79424
    Telephone: (806) 783-8322
    Facsimile: (806) 783-8357
    Email: kct@kctlaw.us

**APPELLANT**


JEFF W. WATTS
Represented by:

    Lorna McMillion
    Mullin Hoard & Brown, LLP
    1500 Broadway, Suite 700
    Lubbock, Texas 79401
    Telephone: (806) 765-7491
    Facsimile: (806) 765-0553
    Email: lmcmillion@mbha.com

**APPELLEE**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES .................................................................................iii

STATEMENT OF THE CASE ..............................................................................v

STATEMENT REGARDING ORAL ARGUMENTS ...........................................vi

ISSUES PRESENTED FOR REVIEW ................................................................vi

STATEMENT OF FACTS ...................................................................................1

SUMMARY OF THE ARGUMENT .....................................................................2

ARGUMENT ......................................................................................................3

I. This Court should reverse the decision of the County Court at Law Number 3 because it abused its discretion by ruling against Plaintiff, CMS, even though the evidence shows CMS satisfied every element of common law fraud. ...................................................................................3

   A. Standard of review is abuse of discretion...............................................3

   B. CMS satisfied its burden of proof by meeting each element of common law fraud................................................................................3

      i. Watts made a representation to CMS by providing CMS the rental agreement. ...............................................................................4

      ii. Watts's representations in the lease agreement were material aspects of the transaction. ..............................................................5

      iii. Watts made a false representation because Watts had no intention of fulfilling his duties and obligations of the rental agreement....................................................................................7

      iv. Watts knew the representation was false when he provided the agreement to CMS. ..................................................................7

      v. Watts intended for CMS to rely on the false representation. ...........8

      vi. CMS justifiably relied on the false representation..........................9

vii. Watts's false representation to CMS caused CMS to suffer pecuniary damages of $31,345.37. ...............................................13

**PRAYER** ................................................................................................15

**CERTIFICATE OF SERVICE** ...................................................................16

**CERTIFICATE OF COMPLIANCE** ..........................................................18

**APPENDICES** ........................................................................................19

# INDEX OF AUTHORITIES

### CASE LAW

*1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*,
192 S.W.3d 20, 30 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ......10

*American Indem. Co. v. Ernst & Ernst*, 106 S.W.2d 763, 765
(Tex. App—Waco 1937, writ ref'd) .................................................................4

*Baker v. City of Robinson*, 305 S.W.3d 783, 797
(Tex. App—Waco 2009, pet. denied)..............................................................14

*Bluebonnet Sav. Bank v. Grayridge Apt. Homes, Inc.*, 907 S.W.2d 904, 909
(Tex. App-Houston [1st Dist.] 1995), writ denied Mar. 7, 1996)....................10

*Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 727
(Tex. App.—Waco 1998, pet denied)................................................................6

*Camden Mach. & Tool, Inc. v. Cascade Co.*, 870 S.W.2d 304, 311
(Tex. App.—Fort Worth 1993, no writ) .........................................................12

*Cooper v. Cochran*, 288 S.W.3d 522, 532 (Tex. App—Dallas 2009, no pet.)........13

*Crim Truck & Tractor Co. v. Navistar Int'l Transp.*, 823 S.W.2d 591, 597
(Tex. 1992)........................................................................................................7

*Ernst & Young, L.L.P. v. Pacific Mut. Life Ins.*, 51 S.W.3d 573, 578
(Tex. 2001)....................................................................................................4, 9

*Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011) ...........6

*Field v. Mans*, 516 U.S. 59, 71 (1995) ...................................................................10

*Flood v. Katz*, 294 S.W.3d 756, 763 (Tex. App.—Dallas 2009, pet. denied) ..........8

*Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923
(Tex. 2010)..................................................................................................10, 11

*Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) ...............................................14

*Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 337
(Tex. 2011)..................................................................................................4, 6, 7

*Libhart v. Copeland*, 949 S.W.2d 783, 799-800
(Tex. App.—Waco 1997, no writ)...................................................................14

*Mayes v. Stewart*, 11 S.W.3d 440, 451
    (Tex. App.—Houston [14th Dist.] 2000, pet. denied) .....................................11

*O'Brien v. Daboval*, 338 S.W.3d 826, 843
    (Tex. App.—Houston [1st Dist.] 2012, no pet.) ...................................9, 10, 11

*Petras v. Criswell*, 248 S.W.3d 471, 475 (Tex. App.—Dallas 2008, no pet.)...........9

*Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985) ...................................9

*Schwartz v. Pinnacle Comms.*, 944 S.W.2d 427, 435
    (Tex. App.—Houston [14th Dist.] 1997, no writ) ........................................3, 10

*Summers v. Welltech, Inc.*, 935 S.W.2d 228, 234
    (Tex. App.—Houston [1st Dist.] 2008, no pet.) .................................................11

## SECONDARY AUTHORITIES

*Black's Law Dictionary*, 950 (9th ed. 2009) ...........................................................8

# STATEMENT OF THE CASE

This is a suit for damages arising out of a common law fraud claim. The issue on appeal is whether the trial court abused its discretion in ruling in favor of the defendant when the court found the defendant did commit fraud.

Siwell Inc. d/b/a Capital Mortgage Services brought suit against Jeff Watts for damages resulting from common law fraud. *Findings of Fact* Paragraph 3. Plaintiff brought suit in the County Court at Law Number 3, Lubbock County, Texas with the Honorable Judy C. Parker presiding. *Final Judgment* p. 1.

Judge Parker found the defendant did in fact commit fraud. *Findings of Fact* paragraphs 19–23. Judge Parker, however, ruled that Plaintiff did not have justifiable reliance to satisfy the reliance element of common law fraud and rule in favor of defendant.

## STATEMENT OF ORAL ARGUMENTS

Appellant hereby requests the opportunity to present this matter by oral argument.

## ISSUE PRESENTED FOR REVIEW

Did the trial court abuse its discretion by ruling against Plaintiff when it found the defendant committed fraud?

<u>**STATEMENT OF FACTS**</u>

In August 2007, defendant Jeff Watts ("WATTS") took his father, Ted Watts ("TED") to Capital Mortgage Services ("CMS") to apply for a mortgage loan. (*Findings of Fact* paragraph 10). WATTS and TED represented the mortgage was for a new home for TED and his wife, and TED would be living in the new home. However, research reveals TED and his wife never moved into the new home, and instead WATTS used his father as a straw man to complete the purchase of the home. (*Findings of Fact* paragraphs 19–21).

TED submitted an Application ("1003") to obtain a mortgage for a new home; during the approval phase, TED disclosed $810 in monthly debt. (*Findings of Fact* paragraph 9). CMS ran a credit report which revealed TED actually had a monthly debt of $2,216; using the actual debt, TED'S debt/income ratio was excessive and rendered TED ineligible for a Fannie Mae home loan. (*Findings of Fact* paragraph 8).

In order to overcome the debt/income problem, WATTS and TED entered into a lease agreement whereby WATTS would lease TED'S current home immediately following TED purchasing a new home with the applied-for mortgage. (*Findings of Fact* paragraph 10). The lease increased TED'S income by $2,185 bringing the debt/income ratio into an acceptable range to obtain the mortgage. (*Findings of Fact* paragraph 10).

1

CMS approved the loan for TED. (*Findings of Fact* paragraph 16). WATTS moved into the home located at XXXX XXXXX Avenue, Lubbock, Texas 794XX, purchased with the proceeds of the mortgage loan provided by CMS. (*Findings of Fact* paragraph 22). WATTS did not ever make lease payments for TED'S house, and ultimately he did not make mortgage payments for the new house. (*Findings of Fact* paragraph 19). Fannie Mae foreclosed on the home located at XXXX XXXXX Avenue, and such foreclosure resulted in a deficiency. (*Findings of Fact* paragraph 25–26). As a result of the deficiency, Fannie Mae sent demand to CMS for reimbursement of $31,345.37, which CMS paid. (*Findings of Fact* paragraph 27–29). Subsequently CMS sued WATTS for fraud based on the deceptive lease. (*Findings of Fact* paragraph 3).

## SUMMARY OF THE ARGUMENT

The trial court found CMS's reliance on the rental agreement as a source of income for TED'S mortgage application was unreasonable given CMS's knowledge of WATTS'S inability to qualify for a loan.

The court's finding would force the Appellant to be unable to use fully executed lease agreements and other documents bearing applicant's or related third party signatures as reliable instruments in the loan approval process.

2

I. **This Court should reverse the decision of the County Court at Law Number 3 because it abused its discretion by ruling against Plaintiff, CMS, even though the evidence shows CMS satisfied every element of common law fraud.**

A. **Standard of review is abuse of discretion.**

In entering judgment, a trial-judge acting as fact finder is presumed to have ruled on the legal sufficiency of evidence and on the weight of the evidence. *Schwartz v. Pinnacle Communications*, 944 S.W.2d 427, 431 (Tex. App.—Houston [14th Dist.] 1997, no writ). When a legal sufficiency challenge is raised, the reviewing court will reverse the trial court's decision if two elements are met. *Id.* First, the reviewing court must examine the trial court record to determine if evidence exists to support the finding of law. *Id.* Second, if there is no evidence to support the finding, the reviewing court must examine the "entire record to determine if the contrary proposition is established as a matter of law." *Id.* Legal sufficiency standards will be upheld if the record shows conclusive evidence that supports all elements of the claim. *Id.* Thus, a trial court abuses its discretion by ruling against a party when the record shows evidence to support each element of the party's claim.

B. **CMS satisfied its burden of proof by meeting each element of common law fraud.**

To prove an action for common-law fraud, the plaintiff must establish each element of common-law fraud, as

follows: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew the representation was false; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 337 (Tex. 2011).

### i. Watts made a representation to CMS by providing CMS the rental agreement.

The lease agreement WATTS provided to CMS was a representation because WATTS signed the rental agreement to pay the rental amount to TED. Based on the rental agreement TED had sufficient monthly income to qualify and receive the loan from CMS.

Plaintiff must establish the defendant was responsible for a false representation made to the plaintiff either directly or indirectly in a claim for common-law fraud. *American Indem. Co. v. Ernst & Ernst*, 106 S.W.2d 763, 765 (Tex. App—Waco 1937, writ ref'd). The defendant commits fraud indirectly when it makes a false representation to a third party with the intent or expectation that it be repeated to deceive the plaintiff. *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins.*, 51 S.W.3d 573, 578 (Tex. 2001).

Here, WATTS made the representation to CMS that he would rent TED'S

4

house, thus providing TED with an increase in monthly income and allowing TED to qualify for the mortgage loan from CMS.

> During the loan process, Jeff Watts signed a rental agreement on August 24, 2007 providing that defendant would rent XXXX XX<sup>rd</sup> Drive (a home owned and occupied by Ted Watts) from his father for $2,185.00 per month for twelve months, beginning September 1, 2007 to September 1, 2008. *Findings of Fact and Conclusions of Law* Paragraph 10.

Further, both TED and WATTS signed the rental agreement. *Findings of Fact and Conclusions of Law* Paragraph 12. WATTS represented to CMS he was leasing his father's house, and this representation was significant to CMS's approval of TED's mortgage loan application. WATTS, however, never intended to reside at the rental property or to make rental payments to TED. *Findings of Fact and Conclusions of Law* Paragraphs 19–21.

Thus, WATTS made the representation to CMS, by signing and providing the rental agreement to CMS, that WATTS would rent the home from TED. This agreement allowed TED to have sufficient income to qualify for a loan.

**ii.    Watts's representations in the lease agreement were material aspects of the transaction.**

The lease agreement WATTS provided to CMS was a material element for

CMS to grant TED a loan because the agreement ensured TED had sufficient income to qualify for the loan.

The plaintiff must establish the misrepresentation was material for a finding of fraud. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011). A false representation is material if it is important to the plaintiff in making a decision such that a reasonable person would attach importance to and be induced to act on the information in determining whether to make a transaction. *Italian*, 341 S.W.3d at 337. A misrepresentation can be material even if it is not the plaintiff's only reason for following through with a transaction, so long as the plaintiff relied on the misrepresentation. *Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 727 (Tex. App.—Waco 1998, pet denied).

Here, the rental agreement WATTS provided CMS was a material representation because it provided rental income information and confirmation of the terms of the lease. *Trial Transcript* p. 47 line 19–p. 48 line 5. The rental agreement contained the terms of the lease, specifically the payment terms, which are a material element in the course of underwriting the mortgage for delivery into the secondary market. *Trial Transcript* p. 47 line 19–p. 48 line 5. Further, without the rental agreement, TED would not have qualified for a loan to purchase the home. *Trial Transcript* p. 13 lines 2–10.

Hence, CMS's reliance on the rental agreement was a material aspect of the transaction because it provided for the

payment terms that qualified TED to receive the loan.

### iii. Watts made a false representation because Watts had no intention of fulfilling his duties and obligations of the rental agreement.

WATTS made a false representation to CMS by providing the rental agreement because he had no intention of making any rental payments to TED, and did not intend to reside at the rented property.

The plaintiff must establish the defendant's representation was false. *Italian* 341 S.W.3d at 337. A party commits fraud when it enters into a contract that it does not intend to perform. *Crim Truck & Tractor Co. v. Navistar Int'l Transp.,* 823 S.W.2d 591, 597 (Tex. 1992).

Here, WATTS did not intend to reside at XXXX XX<sup>rd</sup> Drive, nor did WATTS intend to rent the property. *Findings of Fact and Conclusions of Law* Paragraph 20–21. Further, WATTS never made any rental payments to his father for the property. *Findings of Fact and Conclusions of Law* Paragraph 19. By entering into the rental agreement without the intent to perform his obligations, WATTS made misleading and deceptive statements to CMS.

WATTS'S representations to pay rent to TED were false because WATTS did not intend to reside at the property or to make the rental payments to TED.

### iv. Watts knew the representation was false when he provided the agreement to CMS.

At the time WATTS provided the rental agreement to CMS, he knew the representation was false because he

knew he did not intend to comply with his obligations under the agreement.

The plaintiff must establish the defendant either made the representation knowing it was false or made the representation recklessly. *Flood v. Katz*, 294 S.W.3d 756, 763 (Tex. App.—Dallas 2009, pet. denied). A defendant makes a misrepresentation knowingly when the defendant is aware of the representation being false or understands it is false. *Black's Law Dictionary* 950 (9th ed. 2009).

Here, WATTS signed the rental agreement and committed to renting TED'S home for $2,185.00 per month. *Findings of Fact and Conclusions of Law* Paragraph 10. WATTS provided the signed rental agreement to CMS. *Trial Transcript* p. 13 lines 2–10. WATTS, however, never made payments and did not intend to make payments or rent the home from TED. *Findings of Fact and Conclusions of Law* Paragraphs 19–21. WATTS knew when he signed the rental agreement that he was making a false representation because he never intended to make rental payments. *Findings of Fact and Conclusions of Law* Paragraphs 19–21.

Since WATTS did not intend to comply with his obligations of the rental agreement, he knew his representations to CMS were false representations.

**v.      Watts intended for CMS to rely on the false representation.**

WATTS intended for CMS to rely on the false representation of the rental agreement because he knew CMS's reliance on the agreement would secure a loan for TED.

To prove an action for common-law fraud, the plaintiff must establish the defendant intended for the plaintiff to rely on the representation. *Petras v. Criswell*, 248 S.W.3d 471, 475 (Tex. App.—Dallas 2008, no pet.). A showing of intent is satisfied by establishing the defendant desired to cause the consequences of his act or believed the consequences were substantially certain to occur, and further, that plaintiff incurred pecuniary loss in the type of transaction in which defendant intended that plaintiff's conduct would be influenced. *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985); *Ernst & Young,* 51 S.W.3d at 580.

Here, WATTS knew that by providing the signed rental agreement to CMS, TED would qualify for the loan since renting the home would generate enough income for TED to become loan eligible. *Trial Transcript* p. 15 lines 1–25. WATTS intended for CMS to rely on the rental agreement so TED could purchase the home. *Trial Transcript* p.13 lines 11–19. By relying on WATTS'S representation in the rental agreement, CMS suffered pecuniary damages of $31,345.37.

WATTS intended for CMS to rely on the false representation made in the rental agreement to secure a loan for TED.

**vi. CMS justifiably relied on the false representation.**

CMS justifiably relied on the false representations WATTS made in the rental agreement because CMS had no way of knowing WATTS did not intend to make the rental payments to TED.

To recover damages on a

9

common law fraud claim, the plaintiff must show actual and justifiable reliance on the representations of the defendant. *O'Brien v. Daboval*, 338 S.W.3d 826, 843 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). Actual reliance is satisfied where plaintiff establishes it knew of the representation and acted on it. *Schwartz,* 944 S.W.2d 427 at 435 (plaintiff's testimony that he decided to make investment based on representations defendant made about creditworthiness of company showed plaintiff's actual reliance). In determining justifiable reliance, courts often consider the following two-pronged analysis: (1) plaintiff's personal characteristics and abilities; and (2) plaintiff's knowledge of facts, which includes the plaintiff's knowledge of falsity and the consideration of plaintiff's duty to investigate. *Grant Thornton LLP*, 314 S.W.3d at 923.

The first prong in analyzing justifiable reliance includes an examination of the characteristics, abilities, and appreciation of facts demonstrated by the plaintiff to justify reliance on the defendant's representations. *O'Brien*, 338 S.W.3d at 843. The United States Supreme Court has ruled justification is a matter of the qualities and character of the particular plaintiff given particular circumstances. *Field v. Mans*, 516 U.S. 59, 71 (1995). The determination of justifiable reliance depends greatly on the parties' relationship and relative sophistication. *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 30 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

10

For instance, in *Bluebonnet Sav. Bank v. Grayridge Apt. Homes, Inc.*, 907 S.W.2d 904, 909 (Tex. App.—Houston [1st Dist.] 1995), writ denied Mar. 7, 1996), the plaintiff's reliance was measured by plaintiff's status as an experienced business person and by what a reasonable business person with plaintiff's experience would think about the agreement in question. Plaintiffs, however, cannot justifiably rely on representations if "red flags" exist, indicating the plaintiff should not rely on the defendant's representations. *Id.*

For example, in *O'Brien v. Daboval*, the court found the defendant committed fraud by issuing false financial statements that induced the law firm into establishing a line of credit for defendant. *O'Brien*, 338 S.W.3d at 843. The court held even though the plaintiff law firm reviewed the financial statements, and had a reasonable level of sophistication in business matters, there was no reason to suspect the statements were false, and reliance upon such statements was justified. *Id*.

The second prong of justifiable reliance courts examine is the plaintiff's knowledge of the facts and the consideration of plaintiff's duty to investigate. *Grant Thornton*, 314 S.W.3d at 923. The plaintiff does not normally have a duty to use due diligence to discover whether the representation is fraudulent in order to demonstrate justifiable reliance. *Summers v. Welltech, Inc.*, 935 S.W.2d 228, 234 (Tex. App.—Houston [1st Dist.] 2008, no pet.). However, if the plaintiff learned the defendant's representation was false

11

before acting on it, the plaintiff cannot claim deception or fraud by the representation. *Mayes v. Stewart*, 11 S.W.3d 440, 451 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Further, if the plaintiff undertook an investigation and uncovered the fraud, the plaintiff cannot claim to have justifiably relied on the misrepresentation. *Camden Mach. & Tool, Inc. v. Cascade Co.*, 870 S.W.2d 304, 311 (Tex. App.—Fort Worth 1993, no writ).

Here, CMS justifiably relied on WATTS'S misrepresentation that he would have sufficient income to justify a loan by leasing the home to increase TED'S income by $2,185. WATTS did not perform the terms of the lease. The trial court found that CMS did rely on WATTS's representations of the rental agreement, but that this reliance was unreasonable given CMS's knowledge of WATTS'S inability to qualify for a loan. *Findings of Fact and Conclusions of Law* Paragraph 23. The trial court erred, however, by ruling the reliance was unjustifiable given CMS's abilities and characteristics, and CMS's knowledge of the facts of the transaction.

First, CMS as a mortgage company has the abilities and characteristics to review applicants' financial information. After reviewing TED'S financial situation, CMS knew TED would not qualify for a loan without a higher monthly income. The lease agreement provided TED with enough income to qualify for the loan. After reviewing WATTS'S financial situation, no red flags existed that would have warned CMS of WATTS intentional misrepresentations.

Second, CMS's knowledge of the

facts did not negate their reliance on the lease agreement as justification for issuing the loan. CMS knew TED had difficulty qualifying for the loan, but the lease served to quell any issues of income. CMS knew WATTS would rent the home and pay $2,185.00 to TED per month. Based on CMS's knowledge of the facts, there was no reason for CMS to suspect WATTS would not follow through with the rental agreement, or that WATTS had made false misrepresentations. Not being able to qualify for a home loan is not the same as not being able to pay a certain, fixed sum of money each month, for rent. Many renters can afford a rental payment but could not qualify for a loan of the same nature. WATTS had the financial means to pay the fixed amount of rent, even though he may not have met the strict qualifications for a home loan.

CMS justifiably relied on WATTS'S false representations because the rental agreement provided TED with sufficient income to qualify for the loan. CMS, as a mortgage lender, reviewed TED'S financial situation and concluded that TED would qualify for the loan with additional monthly income. Despite its review of the financial situation, CMS had no way of knowing WATTS did not intend to make the rental payments to TED.

### vii. Watts's false representation to CMS caused CMS to suffer pecuniary damages of $31,345.37.

As result of its reliance on Watts's false representations, CMS suffered pecuniary damages.

13

Finally, to recover damages on a common law fraud claim, the plaintiff must show the representation caused the plaintiff injury. *Cooper v. Cochran*, 288 S.W.3d 522, 532 (Tex. App—Dallas 2009, no pet.). Such injury comes as defendant's representation occurs "to the plaintiff's detriment." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). To prove the representation caused the plaintiff injury, plaintiff must prove the fraud proximately caused the damages where the plaintiff seeks consequential damages. *Libhart v. Copeland*, 949 S.W.2d 783, 799-800 (Tex. App.—Waco 1997, no writ). The plaintiff must prove the fraud was a substantial factor in bringing about the damages, without which the damages would not have occurred, and that a person of ordinary intelligence would have foreseen the damages might result from the fraud. *Baker v. City of Robinson*, 305 S.W.3d 783, 797 (Tex. App—Waco 2009, pet. denied).

Here, WATTS made a representation to CMS by signing a rental agreement. Such representation was material because without the representation of a steady monthly income stream in the form of the lease payments from WATTS to TED, TED would not have been approved for the mortgage loan. The representation was false and WATTS admitted he did not have any intention of following through with the requirements of the lease agreement. WATTS intended for CMS to act on the misrepresentation, knowing that the bolster in monthly income would result in the mortgage loan approval for his ultimate benefit. CMS did in fact rely upon the representation; absent the lease

agreement CMS would not have given TED the mortgage loan. By relying upon WATTS'S misrepresentation, CMS suffered economic damages in the form of the reimbursement to Fannie Mae in the amount of $31,345.37.

The trial court abused its discretion by ruling CMS could not justifiably rely on WATTS'S false representations. CMS established by evidence each element of common law fraud including: (1) WATTS made representations to CMS in the rental agreement; (2) the representations of the rental agreement were material to the transaction; (3) WATTS'S representations in the rental agreement were false; (4) WATTS knew the representations were false when he provided the agreement to CMS; (5) WATTS intended for CMS to rely on the false representations to grant a loan to TED; (6) CMS did justifiably rely on the representations; and (7) WATTS'S false representations caused CMS pecuniary damages. Specifically, CMS justifiably relied on WATTS'S false representations because CMS performed financial investigations, but these investigations could not have indicated WATTS did not intend to fulfill his duties and obligations under the rental agreement.

## PRAYER

WHEREFORE PREMISES CONSIDERED, CMS respectfully requests that this court reverse the judgment of the trial court, and grant all other relief to which CMS is justly entitled both at law and in equity.

[SIGNATURE ON FOLLOWING PAGE]

15

Respectfully submitted,

THE LAW OFFICE OF KEITH C. THOMPSON, P.C.

11003 Quaker Avenue
Lubbock, Texas 79424
(806) 783-8322 (Telephone)
(806) 783-8357 (Telecopier)
Email: kct@kctlaw.us
SBN 24013631

/s/ Keith C. Thompson
KEITH C. THOMPSON
ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

I, Keith C. Thompson, Attorney for Appellant herein, do certify that on the

13th day of April 2015, I mailed by Electronic Mail, a true and correct copy of

Appellant's Brief to:

Lorna McMillion
Mullin Hoard & Brown, LLP
1500 Broadway, Suite 700
Lubbock, Texas 79401
Telephone: (806) 765-7941
Facsimile: (806) 765-0553
Email: lmcmillion@mhba.com


I further certify that on the 13th day of April 2015 I mailed by Electronic

Mail, an original and five true and correct copies of Appellant's Brief for filing to:

Court of Appeals
Seventh District of Texas
Potter County Courts Building
501 S. Fillmore, Suite 2-A
Amarillo, Texas 79101-2449

/s/ Keith C. Thompson

KEITH C. THOMPSON

## CERTIFICATE OF COMPLIANCE

This document complies with the word-count limitations of TEX. R. APP. P. 9.4(i) because it contains 3,538 words, excluding the parts exempted by TEX. R. APP. P. 9.4(i)(1).

/s/ Keith C. Thompson
KEITH C. THOMPSON

# APPENDICES

Final Judgment from Trial Court ................................................................1

Trial Transcript ................................................................................2

Findings of Fact and Conclusions of Law ................................................3

Mortgage Application ...........................................................................4

Rental Agreement ................................................................................5

## 2013-568,987

CAUSE NO. 2013-568,987

| | | |
|---|---|---|
| SIWELL, INC. d/b/a CAPITAL MORTGAGE SERVICES | § | IN THE COUNTY COURT |
| | | AT LAW #3 |
| V. | | |
| JEFF W. WATTS | § | OF |
| | § | LUBBOCK COUNTY, TEXAS |

### FINAL JUDGMENT

On December 2, 2014 this matter came on for trial. Plaintiff, SIWELL, INC., d/b/a CAPITAL MORTGAGE SERVICES, appeared in person and through attorney Keith Thompson. Defendant, JEFF W. WATTS, appeared in person. The parties waived trial by jury and announced ready.

The Court, after considering the pleadings on file, as well as the testimony and evidence, concludes that Plaintiff has failed to prove each element of its case against Defendant.

It is therefore ORDERED, ADJUDGED, AND DECREED that Plaintiff, SIWELL, INC., d/b/a CAPITAL MORTGAGE SERVICES, shall take nothing from Defendant, JEFF W. WATTS.

This is a final judgment that disposes of all parties and claims. As such, it is appealable.

Plaintiff shall pay all taxable costs of court if it has not already done so.

All relief not granted herein is denied.

SIGNED ON the ___8___ Day of DECEMBER, 2014.

_____
JUDGE PRESIDING

2013-568,987

Filed 1/22/2015 2:46:38 PM
Kelly Pinion
County Clerk
Lubbock County, Texas

Baxter Vaughan

2013-568,987

| | |
|---|---|
| SIWELL, INC., D/B/A<br>CAPITAL MORTGAGE SERVICES<br>*PLAINTIFF* | IN THE COUNTY COURT AT<br>LAW NO.3 |
| V. | OF |
| JEFF W. WATTS | LUBBOCK COUNTY, TEXAS |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

A trial on this cause was held on December 2, 2014. All parties appeared and announced to the Court that they were ready for trial. A jury was not requested, and the Court decided all fact questions.

In response to the request of the Plaintiff, Siwell, Inc., d/b/a Capital Mortgage Services, the Court makes and files the following as original findings of fact and conclusions of law in accordance with rules 296 and 297 of the Texas rules of Civil Procedure.

Plaintiff is Siwell, Inc., D/B/A Capital Mortgage Services. Plaintiff is a mortgage lender, and appeared through its representative, Royce Lewis III. The plaintiff was represented by Keith Thompson. The defendant, Jeff W. Watts, appeared pro se.

#### Findings of Fact

1. Plaintiff sued defendant for quantum meruit, promissory estoppel, common law fraud and statutory fraud arising out of a mortgage loan that plaintiff made to defendant's father, Ted Watts. Ted Watts is not a party to this suit. Ted Watts is deceased.
2. The loan Plaintiff made to Ted Watts was for the purchase of a house at XXXXX Avenue in Lubbock.
3. Prior to resting his case, Plaintiff abandoned all causes of action pled except for common law fraud.
4. Initially, defendant met with Royce Lewis individually, to discuss the purchase of XXXXX
5. Defendant could not qualify for a home loan on his own because he had an activation of a foreclosure on another residence and/or a recent foreclosure on his record.
6. Plaintiff knew that Defendant could not qualify for a mortgage loan under any circumstance.
7. Defendant and his father met with plaintiff/Royce Lewis and discussed various scenarios whereby the house on Utica could be purchased. These discussions included Ted Watts co-signing the loan with defendant, Ted Watts purchasing the home for defendant as an investment property for defendant to live in, Ted purchasing the home as an owner-occupied transaction, and defendant renting the home from Ted.
8. During the loan process it was discovered that Ted Watts could not qualify for the mortgage on the Utica house because his income from his insurance business was insufficient and he had too much debt.

9. During the application process for the loan on XXXXX, Ted Watts disclosed $810.00 in monthly debt on Form 1003.

10. During the loan process, Jeff Watts signed a rental agreement on August 24, 2007 providing that defendant would rent XXXX drive (a home owned and occupied by Ted Watts) from his father for $2,185.00 per month for twelve months, beginning September 1, 2007 to September 1, 2008.

11. The rental payment for XXXX drive was the same amount as the house payment for XXXXX.

12. The rental agreement was signed by Ted Watts and defendant.

13. Plaintiff was not a party to the rental agreement between Ted Watts and defendant.

14. Defendant testified that Mr. Lewis gave him the rental agreement to sign so that Ted Watts would show more income and Ted could obtain the loan.

15. Mr. Lewis denied that he handed the rental agreement to defendant to sign, but could not deny that it was provided by Capital Mortgage Services in some shape or form.

16. In September 2007, Plaintiff, Capital Mortgage Services loaned Ted Watts the money to purchase XXXX a and the loan was delivered to Fannie Mae.

17. Defendant, Jeff Watts was not a co-signer on the loan.

18. Defendant, Jeff Watts made some payments to plaintiff for XXXX a.

19. Defendant, Jeff Watts did not make any rental payments to Ted Watts for the home at XX X drive.

20. Defendant did not intend to reside at yyyyy drive.

21. Defendant never intended to rent yyyyy drive.

22. Defendant moved into the home at XXXXXX a after the loan was made to Ted Watts and lived there for a couple of years.

23. Plaintiff relied on the representations in the rental agreement as a source of income for the Ted Watts mortgage application but that reliance was unreasonable given plaintiff's knowledge of defendant's inability to qualify for a loan.

24. The loan made to Ted Watts was current for a number of years after the loan was made.

25. Almost six years after plaintiff made the mortgage loan to Ted Watts, the house purchased by Ted Watts was foreclosed.

26. The loan made to Ted Watts for XXXXXX went into default and was foreclosed on by Plaintiff.

27. Fannie Mae conducted the liquidation on the property at XXXXXX a and it was sold at a price less than the amount of the mortgage, leaving a deficiency of $62,690.73.

28. Fannie Mae sought recourse against plaintiff as the loan servicer for the deficiency.

29. Plaintiff, Capital Mortgage Services, negotiated a lesser amount with Fannie Mae and paid $31,345.37 in settlement.

30. Fannie Mae sought recourse from the loan servicer (Capital Mortgage Services/Plaintiff) because Fannie Mae determined that the loan made to Ted Watts did not meet desk top underwriting standards when the loan was made.

31. Fannie Mae's evaluation of the loan to determine whether or not the servicer has liability is based on the transaction when the mortgaged originated and then delivered to Fannie Mae.

32. Fannie Mae found additional debt that was not identified on Ted Watt's application form 1003 to support the loan.

33. Even if defendant, Jeff Watts, had actually been paying Ted Watts $2,185.00 per month as set out in the rental agreement, Ted Watts would not have had sufficient income to support the loan.

34. It was unreasonable for Plaintiff to rely on the twelve month rental agreement between defendant and his father given the plaintiff's actual knowledge that defendant could not qualify to purchase the home with a payment of $2,185.00 per month.
35. The basis of plaintiff's liability to Fannie Mae was the debt/income ratio of Ted Watts.
36. Plaintiff's reliance, if any, on defendant as a significant contributor of significant funds was unreasonable given plaintiff's knowledge of defendant's financial/credit history.
37. Plaintiff's liability to Fannie Mae was a result of risky underwriting practices of plaintiff at the origination of the loan to Ted Watts.
38. Insufficient income/omitted liabilities at the origination of the loan to Ted Watts was cited by Fannie Mae as the reason for pursuing plaintiff's payment on the deficiency.
39. Even if plaintiff relied on the lease, plaintiff discovered or should have discovered that Ted Watts had co-signed a loan for defendant prior to the loan for the Utica house which resulted in Ted Watts not meeting desktop underwriting standards to support the loan.
40. In addition to a significant finding of insufficient income/omitted liabilities at the time of origination, Fannie Mae evaluated the overall loan profile and number of payments made on the loan in considering the amount of liability of plaintiff.
41. Any finding of fact that is a conclusion of law should be treated as a conclusion of law and not a finding of fact.

## Conclusions of Law

1. Plaintiff failed to prove reliance on the rental agreement was reasonable.
2. Plaintiff failed to establish that defendant was liable to plaintiff for fraud.
3. Plaintiff's damages were caused by plaintiff's underwriting practices.
4. Plaintiff should take nothing by his suit and pay all costs of court.
5. A conclusion of law that is a finding of fact should be treated as a finding of fact and not a conclusion of law.

Signed this 22nd day of January, 2015.

Judy C. Parker, Judge
County Court at Law #3

## CRT DOA Approval Form
### (Revised 4/9/2013)

| | |
|---|---|
| Reviewer: Nicole | Approval Request Date: 6/19/2013 |
| FNMA Loan ID: 4005552139 | Credit Score: 738 |
| Lender Name: Capital Mortgage (Siwell) | DTI at Delivery: n/a |
| Lender Servicer ID: 22699 | Age of Review (# of Days): 329 |
| Borrower Name: Watts | Appeals (#): 3 |
| Review Type: pfr | Reaffirms (#): 2 |
| LTV/CLTV: 100 | Last Appeal Date: 3/6/2013 |
| Occupancy Type: Principal | Last Reaffirm Date: 11/30/2012 |
| Loan Purpose: purchase | Date Initial SFL Sent: 5/22/2012 |
| Total Number of Pymts: 32 | Property Disposition: disposed |
| Number of Pymts before Mod: 17 | MI Claim Paid (Y/N): Yes $46,950 |
| Number of Pymts since Mod: 15 | TPO: n |
| Doc Type: full doc | Is Loan in Breach of SVC? (Y/N): n |

Recommended Action (Negotiated Settlement, Business Reason or Acceptable Loss): negotiated settlement

Current (Total) Loss Amount is $62,690.73 as of this date: 5/14/13

Loss Amount is being reduced by: $ OR* 50% *Indicate a dollar amount OR a percentage, but not both (Negotiated Settlements Only)

Net Amount due from lender (after reduction): $31,345.37 (Negotiated Settlements Only)

SIGNIFICANT FINDING: Findings:

Insufficient income/omitted liabilities: According to Desktop Underwriter® (DU®), the borrower's monthly debts were $810 at time of origination. However, our review of the origination credit report revealed the actual monthly payments were $2,216. Using the actual monthly payments, the new debt ratio was 33/71 percent. This debt ratio was excessive and renders the DU recommendation invalid and the subject mortgage ineligible for delivery to Fannie Mae.

LENDER RESPONSE IF APPLICABLE (*Brief summary only*): There was a debt the lender excluded from the ratios but did not have evidence supporting the exclusion. The lender provided a letter from the Executive VP of the Bank who made the loan (debt in question) stating the borrower was a co-signer and the borrower's son had made all of the payments on time for the prior 12 months.

Requirements when completing analysis

Evaluate significance of finding based on overall loan profile and # of payments made.


PETITIONER'S EXHIBIT 12.2.14

Do the overall strengths of the file warrant the Business Decision or Negotiated Settlement? Why?

**REVIEWER'S ANALYSIS/RATIONALE FOR ACTION TAKEN (indicate any and all reasons that apply and provide detailed explanation).** The lender should have obtained 12 months of cancelled checks to support the son had been making the payments. The bank letter is an alternative document that supports the exclusion of the debt. The borrower was becoming a landlord for the first time and did not have any history of managing rental properties increasing the risk of this transaction and accepting alternative documentation. We still have a case for repurchase but I believe the lender has provided documentation that reduces some of our risk therefore I have offered a negotiated settlement.

**MANAGER APPROVAL VIA EMAIL IS REQUIRED AND MUST BE COPIED INTO QAS (Signature is NOT required)**

**DIRECTOR APPROVAL VIA EMAIL IS REQUIRED AND MUST BE COPIED INTO QAS – (Only IF net loss exceeds $50,000.00 – Signature is NOT required)**

**NOTE: This form MUST be completed *in its entirety* and uploaded into QAS e-docs (uploading the form in QAS comments is no longer allowed). Please enter "N/A" in any areas that are not applicable to the loan.**

**See "CLOSING LOANS IN QAS" in CRT Sharepoint training material site for specifics on loss amount levels and required approvals.**

## Rental Agreement

1. In consideration for the use of the premises at: xxxxx Drive, Lubbock, TX 79413, I agree that I will rent the same for the same for 12 consecutive months for $2185.00per month payable by the first day of each month and also agree to pay a late fee of $250.00 per week. *(Lease term September 01, 2007 to September 01, 2008)*

2. I agree to place a security deposit of $1000.00, to be forfeited as liquidated damages in the event of default or breach of any part of this agreement.

3. I agree to give written notice of vacating of 30 days, return all keys and leave the premises in reasonable clean condition. Then the security deposit will be refunded, unless rent is due or cleaning is necessary.

4. I will maintain the premises in reasonable and habitable condition, ( no smoking allowed) and accept the as being the same. I also accept any attached inventory and agree that the rental rate may be reasonably changed due to expenses, rental conditions, or sale of the premises.

5. I am responsible for utilities, maintenance of yard and landscaping.

6. I agree to assume all legal responsibility for the acts and conduct of any visitors and keep all house rules and will not violate any laws on the premises.

7. I agree not to transfer or assign this agreement not let or sub-let the premises or ant part of the same without written consent to the owner.

8. I am authorized and capable to sign this agreement and I am not relying on prior oral or written representations of the owner agent.

9. The owner agent may enter the premises at any time to inspect, repair, maintain, or show the property.

10. I will not remove any furniture, fixtures, or personal property until all rent charges are fully paid and rant the owner lien on the same.

11. My rental application form is complete and accurate.

12. In the event of default or breach of this agreement, I agree to any appropriation action taken by the owner or agent to legal action, and agree to pay all costs including reasonable attorney's fees.

13. Landlord is not liable for loss or damage of tenant's personal belongings. We urge you to get your own rental insurance for losses due to theft, fire, smoke, water damage, and the like.

14. All tenants must show proof of insurance for their waterbeds or be held liable for the damages to the building and its contents resulting from damage from the waterbeds.

Copy exhibits received the 24 day of August, 2007.

_____
Written signature of renter

_____
Written signature of renter

_____
Written signature of rentor

_____
Ted Wayne Watts

PENGAD-Bayonne, N. J.

PETITIONER'S
EXHIBIT

12.2.14